**This order is SIGNED.**

Dated: May 21, 2018

KEVIN R. ANDERSON
U.S. Bankruptcy Judge



*Prepared and Submitted By:*

George Hofmann (10005)
Jeffrey Trousdale (14814)
**Cohne Kinghorn, P.C.**
111 East Broadway, 11th Floor
Salt Lake City, UT 84111
Telephone: (801) 363-4300
Facsimile: (801) 363-4378

Attorneys for Kenneth Rushton,
Chapter 7 Trustee

**IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF UTAH, NORTHERN DIVISION**

| In re<br><br>THRIVE NATIONAL CORP,<br><br>Debtor. | Bankruptcy No. 16-26526 (KRA)<br><br>Chapter 7 |
|---|---|
| In re<br><br>THRIVE SYSTEMS, INC.,<br><br>Debtor. | Bankruptcy No. 18-21212 (KRA)<br><br>Chapter 7 |

**STIPULATED FINDINGS OF FACT AND CONCLUSIONS OF LAW WITH RESPECT
TO TRUSTEE'S MOTION FOR LIMITED SUBSTANTIVE CONSOLIDATION AND
JOINT ADMINISTRATION**

{00382793.DOC / 4}

This matter came before the Court on May 15, 2018 (the "Hearing"), upon the *Trustee's Motion For Limited Substantive Consolidation and Joint Administration* (the "Motion") [TNC Docket No. 118, TSI Docket No. 7]. Parties in interest, and their counsel, noted their appearances upon the record of the Hearing. At the Hearing, the Court considered the Motion and related pleadings filed by Kenneth Rushton, Chapter 7 Trustee (the "Trustee") for Thrive National Corp. ("TNC") and Thrive Systems, Inc. ("TSI," and together with TNC, the "Debtors"), and the pleadings filed by Bailey Hall ("Hall") and J. Hoyt Stephenson, Margie Stephenson, and Just Fitness 4 You (the "Stephenson Parties") in response. The Court considered the evidence adduced by the parties at the Hearing, including Exhibits 1-12 based on the uncontested proffer of the Trustee's testimony and the uncontested proffer of the testimony of Carl Darwin Nelson ("Nelson") stated on the record at the Hearing. The Court also considered the oral argument presented by the parties at the Hearing, and the *Stipulated Order Granting in Part Trustee's Motion for Limited Substantive Consolidation and Joint Administration* (the "Stipulated Order") filed and agreed to by the Trustee, Hall, and the Stephenson Parties. Based upon the foregoing, and pursuant to Federal Rule of Bankruptcy Procedure 7052 and this Court's Local Rules, the Court hereby finds and concludes as follows:[1]

## FINDINGS OF FACT

**I.　　TNC BANKRUPTCY CASE**

    A.　　TNC is a Delaware corporation that formerly did business in Utah.

---

[1] Findings of fact shall be construed as conclusions of law and conclusions of shall be construed as findings of fact when appropriate. Fed. R. Bankr. P. 7052.

{00382793.DOC / 4}　　　　　　　　　　2

B.    TNC commenced its bankruptcy case by filing a voluntary Chapter 11 petition on July 27, 2016 (the "TNC Petition Date").

C.    On October 24, 2016, the TNC bankruptcy case was converted a case under Chapter 7 of the Bankruptcy Code, and George Hofmann was appointed as the Chapter 7 Trustee (the "Former Trustee").[2]

D.    After the Former Trustee resigned, the Trustee was appointed on August 18, 2017.  The Trustee is presently acting to liquidate TNC's assets for the benefit of creditors.

E.    As of the Petition Date, TNC's Bankruptcy Statements and Schedules (the "TNC Schedules") show that it owed at least $2,714,680.43 to unsecured creditors.[3]

F.    On the TNC Schedules, filed on August 31, 2016, TNC listed TSI as a 100% owned subsidiary of TNC.

G.    TNC did not seek to substantively consolidate TSI's bankruptcy into TNC's bankruptcy at or near the time of the filing of TNC's bankruptcy case.

H.    The 341 meeting of creditors in the TNC Case was held on November 22, 2016. At that time, the Former Trustee did not seek the substantive consolidation of TSI.

I.    Soon after the filing of the TNC Bankruptcy Petition and the TNC Schedules, certain of TSI's creditors began demanding payment from TSI on the loans

---

[2] The Former Trustee resigned as trustee on August 18, 2017, because of a potential conflict of interest arising from a pre-bankruptcy payment of $5,000 to the law firm of Cohne Rappaport & Segal, a predecessor by merger to the Former Trustee's law firm. However, because of the Former Trustee's familiarity with the case, the Trustee sought and obtained approval of the Former Trustee and his firm's employment as special counsel for the Trustee. See Order Approving Trustee's Second Amended Ex Parte Application for Order Authorizing Employment of Special Counsel [TNC Docket No. 115].

[3] TNC Schedules at p.4, TNC Docket No. 21, Trustee's Exhibit No. 1.

{00382793.DOC / 4}    3

and lines of credit and other obligations incurred by TSI before the filing of the TNC bankruptcy petition.

J.   For example, Amra Enterprise LLC, asserted an unsecured claim against TSI in the amount of $429,922.51.  Amra Enterprise, LLC continued to pursue its claim against TSI in court based on the fact that TSI was not protected by the automatic stay as against TNC.

K.   TSI was not protected or covered by the automatic stay that arose as a result of the TNC Bankruptcy Petition.

## II.   TSI BANKRUPTCY CASE

L.   TSI is a Delaware corporation formerly doing business in Utah.

M.   On February 16, 2018, TNC, acting as the sole shareholder for TSI, elected the Trustee to serve as sole director for TSI, removing any other directors who may have been elected earlier.

N.   The Trustee, acting as the sole director of TSI, authorized the filing of TSI's voluntary bankruptcy petition under chapter 7 of the Bankruptcy Code (the "TSI Petition").

O.   On February 28, 2018 (the "TSI Petition Date"), TSI filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code (the "TSI Petition").

P.   The Trustee was appointed as the Chapter 7 Trustee for TSI.

Q.   Prior to filing the TSI Petition, the Trustee and his professionals undertook substantial efforts to identify all known creditors or possible creditors of the TSI (and TNC) estate. To date, the Trustee has identified more than 500 potential creditors or parties-in-interest, which are listed on the mailing matrix in the TSI Case.

R. The creditors and parties-in-interest in the TSI Case received notice of the Motion and the related notice of hearing by first class mail on March 11, 2018.[4] The creditors and parties-in-interest in the TNC Case (who did not receive electronic notice) received notice of the Motion and the related notice of hearing by first class mail on March 14, 2018.[5]

S. TSI has not filed statements or schedules in the TSI Case. On March 30, 2018, the Court entered its Order Granting Motion to Designate Bailey Hall as Person Responsible for Preparing Statement of Financial Affairs and Schedules (the "Designation Order").[6] Under the Designation Order, Hall is designated as the person responsible for preparing the statement of financial affairs and schedules in the TSI Case and to sign the required verifications of those documents, with the Trustee's attorneys to take the "laboring oar" of preparing the documents.

## III. BACKGROUND OF THE DEBTORS

T. The Trustee, together with his Court-appointed professionals, and utilizing information gathered and prepared by the Former Trustee, has conducted an investigation of the history, business, and financial affairs of the Debtors, including (i) reviewing the limited financial records available to him via a brief investigation by the Former Trustee of the Debtors' former headquarters, (ii) reviewing accounting records made available through inquiries and subpoenas to third-parties, (iii) interviewing former

---

[4] See Certificate of Service, TSI Docket No. 10

[5] See Certificate of Service, TNC Docket No. 121.

[6] TSI Docket No. 14.

{00382793.DOC / 4}                                5

employees and third-parties regarding their interactions and experience with the Debtors; and (iv) obtaining information from various other sources.

U. Prior to filing bankruptcy, Thrive and TSI were primarily in the business of providing billing, payment processing, and collection services (collectively, the "Billing Services") to health clubs and gyms across the country.

V. TSI was primarily responsible for overseeing and operating the Billing Services, while TNC "owned" most of the assets—including a 100% interest in TSI—which were used for the Billing Services.

W. Hall incorporated TNC and TSI with the State of Delaware on December 18, 2009. TNC and TSI were registered as foreign corporations with the State of Utah on March 10, 2010.

X. TNC is the 100% owner of TSI.

Y. Hall formed TNC and TSI to acquire and operate Metronomics, Inc. ("Metronomics"), National Fitness Financial Systems, Inc. ("National Fitness"), and Grand View Corporate Centre, LLC ("Grand View").

Z. Hall has alleged that TNC purchased Metronomics, National Fitness, and Grand View (collectively, the "Stephenson Entities") from Stephenson. Stephenson has disputed that Hall and/or TNC ever completed their purchase of the Stephenson Entities. These findings of fact and conclusions of law are not meant to be, and should not be, construed as findings of facts or conclusions of law with respect to the dispute between Hall, TNC, TSI, and/or the Stephenson Parties regarding the ownership of the Stephenson Entities or any other dispute between the Stephenson Parties, Hall, and the Debtors.

## IV. COMMON MANAGEMENT, OFFICES, ACCOUNTING AND REPORTING

AA. The Debtors shared other common management, including, at various times, Nelson, George Ulrich (the Debtors' former CFO), and Scott Mee (the Debtors' COO).

BB. The Debtors shared other common employees who performed services for both Debtors, and who were generally paid out of TSI's payroll account.

CC. The Debtors shared common business offices in the Grand View Corporate Centre, in Layton, Utah, which was owned by Grand View.

DD. The Debtors regularly combined their collective assets and liabilities for accounting and reporting purposes, both internally and in representations to third parties.

EE. TNC filed consolidated tax returns on behalf of itself and TSI, and included TSI's assets, liabilities, and operating activities on its tax returns.[7]

FF. In the months, and even years, prior to the TNC Petition Date, the Debtors' accounting records were inaccurate or incomplete.

GG. TNC, TSI, the Trustee, and Hall have had difficulty accessing the Debtors' records. Many of those records are no longer available, and to the extent that they were available at the Debtors' former headquarters, the Debtors, Hall, and the Trustee no longer have access to the Debtors' former headquarters due to a foreclosure on the headquarters.

## V. COMMON CREDITORS

HH. The Debtors shared certain common creditors.

---

[7] See TNC 2014 Tax Return, Trustee's Exhibit No. 2.

II.  In prior filings with this Court, Hall has alleged that "the creditors of TSI are included in [TNC's] bankruptcy."[8]

JJ.  On the TNC Schedules, the following creditors are listed with the designation "Loan as Guarantor":

    (i)  Arch Capital;

    (ii)  Business Financial Services;

    (iii)  Continental Bank;

    (iv)  Gene B Investments, LLC;

    (v)  Global Merchant Cash;

    (vi)  High Speed Capital LLC;

    (vii)  Keystone National Group LLC; and

    (viii)  SBA.[9]

KK.  Consistent with the allegations of Hall, the creditors listed in the immediately preceding paragraph also appear to be creditors of TSI or were paid from funds collected by TSI.

LL.  Another creditor listed on the TNC Schedules is Bashar Sabbagh ("Sabbagh"), based on an alleged loan of $375,000 to TNC.[10] Sabbagh was a lender to TNC as early as February 8, 2010, pursuant to a promissory note (the "Sabbagh 2010

---

[8] See Third-Party Objecting Parties' Objection and Response to Trustee's Motion for Substantive Consolidation, p. 1, TNC Docket No. 86, Trustee's Exhibit No. 3.

[9] See TNC Schedules.

[10] Id.

Promissory Note) entered on that date. TSI was a guarantor on the Sabbagh 2010 Promissory Note.[11]

MM. Sabbagh is also shown as a lender on certain promissory notes made by TSI in Sabbagh's favor.[12]

NN. To the extent that Sabbagh was repaid for the obligations of either of the Debtors, he was generally paid out of TSI's operating account.

OO. The Debtors had other common creditors. For example, On or about June 30, 2010, TNC, TSI, and Grand View renewed a $1,000,000 credit line with Zions Bank, on which all three entities were identified as "borrowers."[13]

PP. Additionally, AMRA Enterprises, LLC, identified as a creditor on the TNC Schedules, was also identified by Hall as a creditor of TSI.[14]

QQ. The Debtors have been subject to lawsuits by shared creditors or claimants, including the Stephenson Parties and Denise Green ("Green"), as Trustee of the Denise J. Green Living Trust (the "Green Trust").

RR. According to Green, she and her late husband, Kent Green, loaned money to Hall, TNC, and/or TSI "to be used in the business of TNC and TSI."[15]

---

[11] See Sabbagh 2010 Promissory Note, Trustee's Exhibit No. 12.

[12] See Sabbagh Promissory Notes, Trustee's Exhibit No. 4.

[13] See Exhibit 9 to Declaration of Bailey Hall (the "2010 Hall Declaration"), filed September 24, 2010, Civil Case No. 100700539, *Stephenson v. Thrive National Corp., et al.*, Trustee's Exhibit No. 5.

[14] See Declaration of Bailey Hall, dated April 4, 2018, TNC Docket No. 129, Trustee's Exhibit No. 6.

[15] Complaint in Civil No. 160905277, *Green v. Thrive National Corp. et al.*, Trustee's Exhibit No. 7.

SS.     Although TNC was the entity that entered into promissory notes with the Green Trust, Green has alleged that TSI was the only entity that made payments to the Green Trust.[16]

## VI.   COMMON ASSETS AND BUSINESS

TT.     On or about December 4, 2015, the Debtors entered into a Software License Agreement with respect to the Software (the "Licensing Agreement"). The first paragraph of the Licensing Agreement provides:

> THIS SOFTWARE LICENSE AGREEMENT . . . is made and entered into this 4th day of December, 2015 . . . by and between Bailey Hall, doing business as, among others, National Fitness Financial Systems, together with Thrive Systems, Inc., a Utah corporation, Thrive Payment Systems, and Thrive National Corporation, a Utah Corporation (collectively, 'Thrive') . . . .[17]

UU.     The Licensing Agreement also provides that "Thrive is the owner of the Software and Documentation."[18]

VV.     In 2012, the Debtors (along with Hall and Metronomics) commenced litigation against the Stephenson Parties in the Second Judicial District Court of Davis County, State of Utah, styled as Civil Case No. 120700361 (the "RPA Case").[19]

WW.    Among other things, the RPA Case brings claims related to certain Revenue Processing Agreements ("RPAs") that TNC purportedly acquired from the

---

[16] Plaintiff's Memorandum in Support of Motion for Summary Judgment, Civil No. 160905277, *Green v. Thrive National Corp. et al.*, Trustee's Exhibit No. 8.

[17] Software Sublicense Agreement, p. 1, Trustee's Exhibit No. 9.

[18] Id.

[19] See Complaint, Civil Case No. 120700361, *Metronomics, Inc. et al. v. Stephenson, et al.*, Trustee's Exhibit No. 10.

Stephenson Parties as part of its acquisition of Metronomics, National Fitness, and Grand View (collectively, the "Stephenson Businesses").[20]

XX. In the RPA Case, the Debtors, collectively with the other plaintiffs, allege that their "entire business is dependent on [Revenue Processing Agreements] remaining in place."[21]

YY. In the 2010 Hall Declaration, Hall stated that "[TNC] acquired from Stephenson all of the NFS Stock and Metro Stock, as well as the ownership interests of Stephenson and Mrs. Stephenson in Grandview . . . ."[22]

ZZ. Although Hall has alleged that TNC acquired the assets of the Stephenson Businesses, TSI was the entity that operated the businesses of the Debtors, including servicing customers' accounts and collecting revenues owed under the RPAs.

AAA. Notwithstanding that TNC is the 100% owner of TSI, Hall has previously (incorrectly) represented that he is the sole shareholder and President of both TNC and TSI.[23] In the same 2016 Hall Declaration, Hall also identified TSI, TNC, Thrive Active Fitness Clubs "and all of the associated entities" as, simply, "Thrive."[24]

## VII. INSUFFICIENT RECORDS AND FAILURE TO OBSERVE FORMALITIES

BBB. The Trustee (and the Former Trustee) have found the Debtors' records to be incomplete, inconsistent, and inaccurate.

---

[20] Id.

[21] Id. at p. 21.

[22] 2010 Hall Declaration at p. 4, Trustee's Exhibit No. 5.

[23] See Declaration of Bailey Hall in Civil Case No. 160700011, *Club 24 Gyms Ltd. v. Thrive Systems, Inc. et al.*, (the "2016 Hall Declaration"), p. 1, Trustee's Exhibit No. 11.

[24] See Id.

{00382793.DOC / 4}       11

CCC.   The Debtors failed to observe corporate formalities.

DDD.   Given the lack of sufficient records and the Debtors' failure to observe corporate formalities, it would be difficult, if not impossible, for the Trustee to accurately account for and differentiate the assets and liabilities as between the Debtors.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over the above-captioned cases and the Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3. Court have considered multiple factors or tests in determining whether substantive consolidation is appropriate.

4. Substantive Consolidation "may be tailored in its incidents, just as any equitable remedy may."[25]

5. The Tenth Circuit Court of Appeals has set forth ten-factors that should be considered when determining whether substantive consolidation is appropriate in a given case:

> (i)    The parent corporation owns all or the majority of the capital stock of the subsidiary;
> (ii)   The parent and subsidiary corporations have common directors or officers;
> (iii)  The parent corporation finances the subsidiary;
> (iv)   The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation;
> (v)    The subsidiary has grossly inadequate capital;
> (vi)   The parent corporation pays the salaries or expenses or losses of the subsidiary;

---

[25] In re Petters Co., Inc., 550 B.R. 438, 448 (Bankr. D. Minn. 2016).

      (vii)   The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation;

      (viii)   In the papers of the parent corporation, and in the statements of its officers, "the subsidiary" is referred to as such or as a department or division;

      (ix)   The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation; and

      (x)   The formal legal requirements of the subsidiary as a separate and independent corporation are not observed.[26]

6. Other Courts have distilled the Fish factors into three primary criteria: First, "the extent to which the entity to be substantively consolidated was managed or controlled by the debtor." Second, "whether the entity to be substantively consolidated had an economic existence independent from the Debtor." Third, the assets of the entities must be "hopelessly commingled."[27]

7. The Court finds and concludes that the Trustee has satisfied the requirements for substantive consolidation, in that, among other facts: (i) TNC is the 100% owner of TSI; (ii) the Debtors had no economic existence independent from each other; (iii) the assets of the Debtors were hopelessly commingled; (iv) the Debtors shared common directors, officers, and employees; (v) the Debtors shared certain common creditors; (vi) the Debtors shared the same corporate headquarters; (vii) the Debtors consolidated their accounting and reporting for tax purposes; and (viii) the Debtors' records are incomplete, inconsistent, and inaccurate, and substantive consolidation would benefit the collective estates and their creditors more than it would harm them.

---

[26] Fish v. East, 114 F.2d 177, 191 (10th Cir. 1940); see also FDIC v. Hogan (In re Gulfco Inv. Corp.), 593 F.2d 921, 928-29 (10th Cir. 1979) (relying on Fish v. East).

[27] See In re Horsley, 2001 WL 1682013, *3-5 (Bankr. D. Utah August 17, 2001).

8. The Trustee seeks substantive consolidation on a *nunc pro tunc* basis, such that the TNC Petition Date will serve as the effective date of the substantive consolidation of the Debtors. The Trustee has agreed to limit his *nunc pro tunc* request as provided in the Stipulated Order, to wit:

> (a) to the extent that the Trustee brings an Avoidance Action on behalf of TSI to avoid any transfer(s) that would not otherwise be avoidable absent the extended "lookback period" under the deemed Effective Date, then the Effective Date may be challenged in such proceeding by: (i) Hall; (ii) the Stephenson Parties; and (iii) any future defendant(s) against whom the Trustee brings an Avoidance Actions, but only if such future defendants can establish that they did not receive notice of the Trustee's Motion;
>
> (b) if challenged by any of the parties set forth in the immediately preceding clause, the Trustee shall have the burden of proof and persuasion to establish that the deemed Effective Date is the appropriate date from which to determine the "lookback period";
>
> (c) for purposes of determining the statute of limitations under § 546(a) of the Bankruptcy Code for bringing an Avoidance Action, July 26, 2016, shall be the "Effective Date" for any Avoidance Action relying on the *nunc pro tunc* extension of the lookback period, without prejudice to the Trustee seeking a further extension of the § 546(a) deadline; and
>
> (d) except as otherwise explicitly set forth in the Stipulated Order, the deemed Effective Date shall not apply or have effect as to the Trustee's or any other parties' rights, obligations, limitations, claims, defenses, or liabilities, including but not limited to acts or proceedings involving TSI that took place between the deemed Effective Date and TSI's petition date (February 28, 2018) that might otherwise be invalidated or affected pursuant to Bankruptcy Code § 362.

9. Substantive consolidation should be granted on a *nunc pro tunc* basis when its use will yield a greater benefit than the harm it may inflict, and to ensure the equitable treatment of all creditors.[28]

---

[28] See In re Auto-Train Corp., 810 F.2d 270, 277 (D.C. Cir. 1987); Alexander v. Compton (In re Bonham), 229 F.3d 750, 764 (9th Cir. 2000).

{00382793.DOC / 4}    14

10. The Stephenson Parties and Hall dispute that *nunc pro tunc* consolidation is appropriate in these cases, but have agreed to *nunc pro tunc* consolidation subject to the specific tailoring of the remedy as provided in the Stipulated Order.

11. The Court concludes that substantive consolidation on a *nunc pro tunc* basis is appropriate in this case, subject to the limitations provided in the Stipulated Order. The Court concludes that Stipulated Order provides parties-in-interest with a reasonable opportunity to contest the appropriateness of *nunc pro tunc* consolidation, to the extent that they (i) received notice, filed an objection to the motion, and are subject to and adverse action from the Trustee based on *nunc pro tunc* consolidation; or (ii) did not receive notice and are subject to an adverse action from the Trustee based on *nunc pro tunc* consolidation.

12. The Court finds and concludes that it is appropriate to enter the Stipulated Order, as agreed to by the Trustee, Hall, and the Stephenson Parties.

**--- END OF ORDER ---**

APPROVED AS TO FORM:

**LeBaron & Jensen, P.C.**

  /s/ Melinda Checketts Hibbert
Melinda Checketts Hibbert
Attorneys for Bailey Hall


**Snow Christensen & Martineau**

  /s/ P. Matthew Cox
P. Matthew Cox
Attorneys for the Stephenson Parties

## DESIGNATION OF PARTIES TO BE SERVED

The undersigned hereby designates the following parties to be served a copy of the foregoing **STIPULATED FINDINGS OF FACT AND CONCLUSIONS OF LAW WITH RESPECT TO TRUSTEE'S MOTION FOR LIMITED SUBSTANTIVE CONSOLIDATION AND JOINT ADMINISTRATION**:

**By Electronic Service**: I certify that the parties of record in this case as identified below, are registered CM/ECF users, and will be served notice of entry of the foregoing Order through the CF/ECF System:

- Matthew K. Broadbent — matt@vannovalegal.com, vannova.ecf@gmail.com; broadbentmr74548@notify.bestcase.com; vannovalegal@ecf.courtdrive.com; itdevelopment@vannovalegal.com; encoreresss.inbound@gmail.com; ecfarchive@vannovalegal.com
- Laurie A. Cayton tr — laurie.cayton@usdoj.gov, James.Gee@usdoj.gov; Lindsey.Huston@usdoj.gov; Suzanne.Verhaal@usdoj.gov
- P. Matthew Cox — bankruptcy_pmc@scmlaw.com
- T. Edward Cundick — tec@princeyeates.com, docket@princeyeates.com; pam@princeyeates.com
- Anna W. Drake — annadrake@att.net, r51122@notify.bestcase.com
- George B. Hofmann — ghofmann@cohnekinghorn.com, dhaney@cohnekinghorn.com; jthorsen@cohnekinghorn.com
- Tyler J. Jensen — tylerjensen@lebaronjensen.com, linda@lebaronjensen.com, Chase@lebaronjensen.com
- Jason B. Richards — jason@jbrlawyers.com, assistant@jbrlawyers.com; richardsjr66365@notify.bestcase.com
- Kenneth A. Rushton tr — KRus8416@aol.com, UT01@ecfcbis.com
- Zachary T. Shields — zshields@strongandhanni.com
- Jeffrey L. Trousdale — jtrousdale@cohnekinghorn.com, nlakey@cohnekinghorn.com
- Steven C. Tycksen — steve@tyshlaw.com, alicia@tyshlaw.com; jacki@tyshlaw.com
- United States Trustee — USTPRegion19.SK.ECF@usdoj.gov
- Michael N. Zundel — mnz@princeyeates.com, docket@princeyeates.com; carolp@princeyeates.com; tec@princeyeates.com; paulette@princeyeates.com
- P. Matthew x2Cox — bankruptcy_pmc@scmlaw.com

        /s/ *Jeffrey L. Trousdale*
        Jeffrey L. Trousdale